UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

───────────────────────────────────────────────────────────

ALPINE GLASS, INC.,                  Court File No. 06-CV-1148 (PJS/RLE)

                    Plaintiff,

                                     ORDER REGARDING PLAINTIFF'S
v.                                   MOTION TO DISMISS COUNTERCLAIM

ILLINOIS FARMERS INSURANCE
COMPANY and MID-CENTURY
INSURANCE COMPANY,

                    Defendants.

───────────────────────────────────────────────────────────

Charles J. Lloyd, LIVGARD & RABUSE, PLLP, 2520 University Avenue SE, Suite 202, Minneapolis, MN 55414, for plaintiff.

Eric J. Magnuson and Diane B. Bratvold, RIDER BENNETT, LLP, 33 South Sixth Street, Suite 4900, Minneapolis, MN 55402; and Steven R. Kluz and Gregory M. Erickson, MOHRMAN & KAARDAL, PA, 33 South Sixth Street, Suite 4100, Minneapolis, MN 55402, for defendants.

This matter is before the Court on the objections of defendants Illinois Farmers Insurance Company and Mid-Century Insurance Company (collectively "Farmers") to the Report and Recommendation ("R&R") issued by Magistrate Judge Franklin L. Noel on September 1, 2006. In his R&R, Judge Noel recommends that all counts of Farmers's counterclaim against plaintiff Alpine Glass, Inc. ("Alpine") be dismissed. The Court has reviewed the record de novo, as required by 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).

The Court reaches the same conclusion as Judge Noel with respect to all counts of Farmers's counterclaim save Count IV. With respect to most counts, though, the Court's analysis differs in some respects from Judge Noel's. Thus, although the Court accepts Judge

Noel's recommendation to dismiss Counts I, II, III, V, VI, and VII, the Court does not adopt

Judge Noel's report except to the extent described in this opinion.

## I. BACKGROUND

Farmers insures automobile owners in Minnesota. Alpine repairs and replaces

automobile glass. Under Minnesota law, an insured who has purchased auto-glass coverage and

who needs repairs does not have to use a vendor recommended by the insurer. Rather, the

insured is free to select any auto-glass repair shop to do the work. Minn. Stat. § 72A.201, subd.

6(14)-(16). Thus, any insured of Farmers has the right to hire Alpine to repair her auto glass. At

the same time, Minnesota law protects the insurer from having to pay more than "a competitive

price that is fair and reasonable within the local industry at large." Minn. Stat. § 72A.201, subd.

6(14). Thus, if Alpine charges more than "is fair and reasonable" for the work that it performs

on behalf of a Farmers insured, Farmers is under no obligation to pay the full amount charged by

Alpine.

When a customer brings her car to Alpine for repair or replacement of a windshield,

Alpine quotes her a price, and Alpine then bills that amount to the customer's insurer. Alpine

promises the customer that, if the amount that it bills to the insurer is later found to be excessive,

and the insurer pays only part of the invoice, Alpine will "eat" the difference — that is, the

customer will not be obligated to pay anything. In return, the customer assigns the proceeds of

her insurance policy to Alpine. Thus, Alpine takes on the responsibility of negotiating with the

insurer and, if necessary, suing the insurer to enforce the policy.

This litigation arises out of a dispute between Farmers and Alpine about how much

Farmers is obligated to pay Alpine for services rendered to insureds of Farmers. Alpine

regularly sends bills to Farmers for work performed on the cars of Farmers insureds, and Farmers regularly refuses to pay those bills in full. Alpine has decided to take action to recover these "short pays." In pursuing these recoveries, Alpine stands in the shoes of the Farmers insureds who have assigned their claims to Alpine. Farmers and Alpine agree that, in general, these short-pay disputes must be arbitrated under Minnesota's No-Fault Automobile Insurance Act ("No-Fault Act"), Minn. Stat. §§ 65B.41-65B.71. *See Illinois Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 798 (Minn. 2004).

This litigation began when Alpine sued Farmers in state court, seeking a declaratory judgment that the numerous short-pay claims could be consolidated into a single arbitration proceeding. Farmers removed the action to this Court, answered the complaint, and filed a seven-count counterclaim. Alpine has now moved to dismiss that counterclaim.

## II. ANALYSIS

### A. *Claims Related to Anti-Assignment Clause*

Several counts of Farmers's counterclaim are based on the alleged invalidity of the assignments by Alpine customers of their rights against Farmers. Judge Noel recommends dismissing those counts on the ground that those assignments were lawful and valid. R&R at 5-7.

The law of Minnesota (and other states) has long distinguished between the assignment by an insured of its right to *coverage* under an insurance policy and the assignment by an insured (after a loss) of its right to *proceeds* under an insurance policy. *See, e.g.*, *Windey v. North Star Farmers Mut. Ins. Co.*, 43 N.W.2d 99, 102 (Minn. 1950); *Rietzner v. State Farm Fire & Cas. Co.*, 510 N.W.2d 20, 26 (Minn. Ct. App. 1993); *In Re Estate of Sharon Marie Sangren*, 504

N.W.2d 786, 790 (Minn. Ct. App. 1993).  In general, courts hold that only the former is invalid

under an anti-assignment clause in an insurance policy.  *See id.*

       The distinction makes sense.  Allowing an insured to assign the right to coverage would

force the company to protect an insured with whom it had not entered a contract — an insured

who might present a far greater level of risk than the policyholder.  The financial consequences

to the insurer could be devastating if, instead of insuring a group of good risks for a particular

amount of premium dollars, the insurer instead found itself (by virtue of various assignments

made by various insureds) insuring a group of bad risks for the same amount of premium dollars.

By contrast, allowing an insured to assign its right to the proceeds of an insurance policy after a

loss has occurred hurts the insurer not at all.  Its obligations are fixed when the loss occurs.  The

assignment does not increase or decrease the financial exposure of the company in any way.

       In objecting to Judge Noel's recommendation that the assignment-related counterclaims

be dismissed, Farmers relies mainly on the language of the anti-assignment clause in its standard

policy.  That clause prohibits the assignment of an "[i]nterest in this policy."  Defs.' Am. Obj. 4.

But this clause is not, as Farmers claims, a "specific and unmistakable" expression of an intent to

bar insureds from assigning not only their right to coverage under the policy, but also their right

to proceeds in connection with a loss that has already occurred.  *Id.* at 6.  The scope of this

clause is not clear, and, under Minnesota law, an ambiguity in an insurance policy is construed

against the insurer.  *See Minn. Mining & Mfg. Co. v. Travelers Indem. Co.*, 457 N.W.2d 175, 179

(Minn. 1990) ("Ambiguous terms in an insurance policy are to be resolved against the insurer

and in accordance with the reasonable expectations of the insured.")  If Farmers wants to

overcome a half century of caselaw distinguishing between the assignment of coverage and the assignment of proceeds, Farmers will have to use clearer language.

Farmers also relies on recent Minnesota caselaw that, it argues, has rejected the distinction between the assignment of coverage and the assignment of proceeds. As Judge Noel pointed out, though, *Travertine v. Lexington-Silverwood*, 683 N.W.2d 267 (Minn. 2004) — a case that did not involve an insurance policy — stands for nothing more than the proposition that a clear anti-assignment clause in a contract will be enforced. The anti-assignment clause in the Farmers policy does not clearly prohibit the assignment of proceeds, as opposed to coverage. Farmers also relies on the unpublished opinion of the Minnesota Court of Appeals in *Physicians Neck & Back Clinics, P.A. v. Allied Ins. Co.*, No. A05-1788, 2006 WL 2053142 (Minn. Ct. App. July 25, 2006). For the reasons described by Judge Noel, this Court also declines to find that the questionable reasoning in this unpublished opinion of an intermediate state court overrules what Judge Noel aptly described as "the widely-embraced and long-established rule that proceeds of an insurance policy may be assigned regardless of the presence of an anti-assignment clause." R&R at 5.

The Court therefore accepts Judge Noel's recommendation to dismiss all counts of Farmers's counterclaim that are based on the alleged invalidity of the assignments by Alpine customers of the proceeds of their Farmers insurance policies. Counts I, II, and V[1] are dismissed

---

[1]Count V seeks not only a declaration that the assignments were invalid, but also a declaration that Farmers does not have to pay Alpine a price that exceeds the "prevailing competitive rate." Defendants' First Amended Answer and Counterclaim ("Counterclaim") ¶ 43. It is difficult to understand the purpose of this request. The statute is clear: Farmers is not required to pay more than "a competitive price that is fair and reasonable within the local industry at large." Minn. Stat. § 72A.201, subd. 6(14). To the extent that Farmers asks this Court to declare that the statute says what the statute says, its request is dismissed for lack of

in their entirety, and Count VI is dismissed to the extent that it alleges that Farmers insureds

"breached the . . . anti-assignment of interest . . . clause[]" of their policies.  Counterclaim ¶ 46.

### B.  Claims Related to Anti-Incentive Statute

Judge Noel also recommends dismissing Count III of Farmers's counterclaim, in which

Farmers alleges that Alpine violated Minnesota's anti-incentive statute, Minn. Stat.

§ 325F.783(a).  R&R at 8-9.  The anti-incentive statute provides:

> (a)   No person who provides retail auto glass products or services paid for in whole or in part, directly or indirectly, by an insurer regarding an insurance claim may:
>
> > (1)   waive, forgive, or pay all or any part of an applicable insurance deductible; or
> >
> > (2)   as an inducement to the sale of goods or services to an insured, advertise or give any rebate, gift, prize, bonus, coupon, credit, referral fee, trade-in or trade-in payment, advertising or other fee or payment, or any other tangible thing or item of monetary value, directly or indirectly, to an insured or any other person not in the employ of the seller.

Judge Noel gave two reasons for his recommendation.  Judge Noel first found that Count

III should be dismissed because it "merely reiterates the statutory language but alleges no

specific fact to support its allegation that Alpine has violated the statute."  R&R at 8.  The Court

respectfully disagrees.  Farmers was required to set forth nothing more than "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  As

the Supreme Court has made clear, *see, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13

(2002), and as the official forms appended to the Federal Rules of Civil Procedure illustrate, *see,*

*e.g.*, Forms 3-9, this is not a demanding standard.  An affirmative claim for relief — including

---

jurisdiction because it presents neither "a case of actual controversy" for purposes of the
Declaratory Judgment Act, 28 U.S.C. § 2201(a), nor a case or controversy for purposes of
Article III of the U.S. Constitution.

one asserted as a counterclaim — "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz*, 534 U.S. at 512 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In Count III of its counterclaim, Farmers alleges that Alpine violated the anti-incentive statute by "promis[ing] to each of the Insureds that [Alpine] would release the Insured from any obligation to pay the difference between the amounts [Farmers] agreed to pay pursuant to the terms and conditions of the Policies and all applicable law and the excessive prices charged by [Alpine]." Counterclaim ¶ 28. Farmers further alleges that Alpine "did in fact give these material inducements, credits and/or rebates to the Insureds in exchange for the Insureds agreeing to do business with [Alpine]." *Id.* Finally, Farmers alleges that "[t]his conduct is illegal and constitutes an unlawful credit and/or rebate to induce the Insureds to purchase retail auto glass products in contravention of Minn. Stat. 325F.783." *Id.* ¶ 29. Count III gives Alpine "fair notice" of how and why Farmers is claiming that it violated the anti-incentive statute.

In the alternative, Judge Noel recommends dismissal of Count III based on his conclusion that Alpine did not, in fact, violate the anti-incentive statute. R&R at 9. In response, Farmers first protests that Judge Noel "inappropriately resolve[d] the fact issues underlying Farmers' claims and completely fail[ed] to view Farmers' allegations in a favorable light." Defs.' Am. Obj. at 8. Farmers is incorrect. For purposes of his analysis, Judge Noel assumed that Alpine's practice was precisely as described by Farmers in Count III. The question before Judge Noel — and now before this Court — is whether this practice violates the anti-incentive statute. That is a legal question, not a factual question, and there is no obligation to view Farmers's *legal* allegations "in a favorable light."

Farmers argues that Alpine's practice violates the anti-incentive statute because it involves Alpine giving a "rebate" or "credit" to a customer in order to induce that customer to buy auto-glass replacement services. Farmers's argument is, in essence, that when Alpine charges a customer $300 for a windshield, and the insurer agrees to pay only $250 of that invoice, Alpine is giving the customer a "rebate" or "credit" of $50. Farmers's argument has surface appeal, but the Court ultimately cannot agree with Farmers's interpretation of Minnesota law.

The anti-incentive statute does not define "rebate" or "credit," and the parties have not cited — nor has the Court found — any Minnesota caselaw interpreting those terms. "When a statute is ambiguous, the legislative intent may . . . be determined by examining other factors including the need for the law, the circumstances of its enactment, the purpose of the statute, and the consequences of a certain interpretation." *Kersten v. Minn. Mut. Life Ins. Co.*, 608 N.W.2d 869, 874-75 (Minn. 2000) (citing Minn. Stat. § 645.16). When the anti-incentive statute is interpreted in light of those factors, it seems highly unlikely that the Minnesota Legislature intended to forbid the practice engaged in by Alpine.

Minnesota appellate courts have said relatively little about the anti-incentive statute and never fully described "the need for the law, the circumstances of its enactment, [or] the purpose of the statute." But these factors would be obvious — at least to some extent — to just about any Minnesotan who owns a radio or television. Before passage of the statute, auto-glass repair shops flooded the airwaves with commercials in which they outbid each other for the business of car owners. *See* Donna Halvorsen, *Auto-glass man Corporaal sells out to employees and retires,* Star Tribune, Feb. 1, 2003, at 1D. A customer was able not merely to get her windshield

repaired, but to take home a box of steaks — or two boxes of steaks — or three boxes of steaks. Legislators feared that the costs of these rapidly escalating "incentives" were being passed on to insurers and that insurers, in turn, were passing on the costs to policy holders in the form of higher premiums. *See Committee Update: Auto glass addressed*, Senate Briefly, Mar. 1, 2002, at 6. In other words, the Legislature was concerned that the majority of insureds whose windshields were not cracked were being forced to buy steak dinners for the minority of insureds whose windshields were cracked. *See* Conrad deFiebre, *House quickly overrides veto of auto-glass legislation*, Star Tribune, Mar. 27, 2002, at 5B ("'You pay for it' in higher auto insurance rates, [Rep. Gregory] Davids said. 'I pay for it, too. And I don't want to pay for it anymore.'").

The purpose of the anti-incentive statute was, in the words of the Minnesota Supreme Court, to prohibit "glass companies . . . from soliciting insureds as customers by offering gifts to those customers who choose to use their services." *Illinois Farmers*, 683 N.W.2d at 796. When an insured suffers a cracked windshield, she is entitled to have her windshield replaced. She is not entitled to a box of steaks with her new windshield. And when an insured suffers a cracked windshield, the insurer is obliged to replace that windshield and to pay "a competitive price that is fair and reasonable within the local industry at large." Minn. Stat. § 72A.201, subd. 6(14). It is not obliged to buy dinner for the insured.

The Minnesota Legislature almost surely intended "rebate" and "credit" to describe financial incentives that, like boxes of steaks, could fairly be characterized as "gifts to . . . customers" — gifts whose costs might be borne by insurers (and, through higher premiums, by insureds). If a shop gave a customer a "rebate" in the form of a cash payment that the customer could then use to buy, say, clothing at a nearby mall, the shop would surely violate the statute.

Likewise, if a shop gave a customer a "credit" toward the future purchase of, say, an oil change, that, too, would violate the statute. In either case, the shop's practice would differ little from giving the customer a box of steaks.

But Alpine's practice is nothing like this. Alpine is essentially charging the customer a contingent price. In effect, when Alpine quotes a price of $300 to a customer, it is saying: "To repair your windshield, we will charge you the lesser of $300 or the amount that your insurance company will pay us." This type of pricing cannot readily be described as involving a "rebate" or "credit." The typical Alpine customer is unlikely to drive her repaired car home and tell her spouse about the "rebate" or "credit" that she received from Alpine. Indeed, a typical customer is unlikely to know or care how much Alpine receives for her new windshield. This is consistent with "Minnesota's statutory scheme for automobile insurance[, which] essentially removes the auto glass customer from the payment process." *Illinois Farmers*, 683 N.W.2d at 795.

Alpine's practice also does not implicate the purpose of the anti-incentive statute. A customer who hires Alpine gets her windshield repaired — nothing less, nothing more. She receives no "gift" — no box of steaks, no rebate to spend on other goods, no credit to apply to future purchases. Moreover, the insurer pays for a new windshield — nothing less, nothing more. An insurer of an Alpine customer, like an insurer of any other customer of any other auto-glass repair shop, is obligated to pay "a competitive price that is fair and reasonable within the local industry at large." Minn. Stat. § 72A.201, subd. 6(14). The only difference is that, at Alpine, the company takes on the obligation of negotiating with the insurer about what is "a fair and reasonable price," and the company assumes the risk that the price it has set exceeds what is "fair and reasonable."

The Court understands why Farmers is resisting Alpine's practice.  That practice is undoubtedly designed to ensure that Alpine does not leave money on the table by charging Farmers and other insurers *less* than a "fair and reasonable" price.  The Court also recognizes that Alpine's practice is merely the latest volley in the longstanding conflict between insurers and auto-glass repair shops over auto-glass replacement prices.  What is important for present purposes, though, is that Alpine's practice contradicts neither the language nor purpose of the anti-incentive statute.  For that reason, Count III of Farmers's counterclaim is dismissed.

## C.  Contract Claims

In Counts IV, VI, and VII of its counterclaim, Farmers asserts claims based on breach of contract.  Because Counts VI and VII present different issues than Count IV, the Court will analyze the counts separately.

### 1.  Counts VI and VII

Counts VI and VII are plead "in the alternative."  Farmers asserts claims for breach of contract premised on the assumption that Alpine "received a lawful assignment of the Policies from each of the Insureds" — which, of course, Farmers denies — and the assumption that Alpine therefore "stands in the shoes of the Insureds and is bound by the Insured's obligations and duties under the Policies."  Counterclaim ¶ 45; *see also id.* ¶ 51.  Farmers then alleges that Alpine, in its role as stand-in for the insureds, breached various terms of the insurance policy, such as the "cooperation, anti-assignment of interest, waiver and change, competitive bidding and appraisal clauses," *id.* ¶ 46, as well as the "implied duties of good faith and fair dealing" in the insurance policy, *id.* ¶ 50.  Judge Noel recommends that these claims be dismissed for lack of

subject-matter jurisdiction, based on his conclusion that the No-Fault Act requires that these claims be arbitrated.  R&R at 9.

It is important to view these claims in context.  Recall that this lawsuit was filed by Alpine in its capacity as assignee of Farmers's insureds.  Analytically, then, it is not Alpine that is making claims against Farmers, but hundreds of Farmers's insureds — William Whidtenberg, Ann Norris, Joyce and Kirby Fluharty, Ellen and David Aksteter, Gregorio Ramirez, and the many others whose names are listed in the 26-page attachment to Alpine's complaint.  If, say, Mr. Whidtenberg had been charged $300 for a new windshield, submitted the bill to Farmers, had Farmers decline to pay more than $250, and sought to challenge Farmers's decision, there is no question that Mr. Whidtenberg's claim would have to be arbitrated under Minnesota's No-Fault Act.  Mr. Whidtenberg's assignment of his claim to Alpine does not change that fact.

It likewise seems clear that if Mr. Whidtenberg sought to force Farmers to pay $300, and Farmers resisted on the grounds that Mr. Whidtenberg had violated the cooperation clause and thus forfeited his right to recover under the policy, Farmers would have to assert that defense in the arbitration proceeding.  A defendant in an arbitration under the No-Fault Act is required to set forth in its response to the plaintiff's petition "all grounds upon which the claim is denied." Minn. R. No-Fault Arb. 5(f).  Again, this result is not changed by the fact that Mr. Whidtenberg assigned his claim to Alpine.

For the most part, what Farmers has done in Counts VI and VII of its counterclaim is recast *defenses* to the claims of its insureds — defenses that must generally be submitted to arbitration — as affirmative claims for relief.  Take, for example, the claim in Count VI that the insureds violated the cooperation clause of their policies.  Counterclaim ¶ 46.  An insured who

violates the cooperation clause does not injure the insured in a manner that is compensable

through money damages.  Instead, an insured who violates a cooperation clause gives the insurer

the right not to perform under the policy.  *See Auto-Owners Ins. Co. v. NewMech Cos., Inc.*, 678

N.W.2d 477, 482 (Minn. Ct. App. 2004).  Farmers's attempt to plead breach of a cooperation

clause as an affirmative claim for relief is, as Judge Noel found, nothing more than a

"transparent attempt to skirt Minnesota's mandatory arbitration of auto glass claims."  R&R at 9.


Farmers argues, though, that the policy-defenses-masquerading-as-claims in Counts VI

and VII of its counterclaim are not subject to arbitration because they raise legal rather than

factual issues.  The Court agrees with Farmers to a substantial extent.  As described below,

Count VI seems intended mainly to refight the battle over the legality of the assignments.  That

is indeed a legal question.  Likewise, Count VII seems intended mainly to refight the battle over

whether Alpine violated a pricing agreement with Farmers.  That, too, is a legal question.  So

Farmers is largely correct that Counts VI and VII raise legal issues that must be decided by the

Court.  Thus the Court will not accept Judge Noel's recommendation that those counts be

dismissed for lack of jurisdiction.  But those claims will be dismissed nonetheless.

Under Minnesota's no-fault scheme, it is generally true, as Farmers insists, that courts

decide legal questions, and arbitrators decide factual questions.  *See AMCO Ins. Co. v.*

*Ashwood-Ames*, 534 N.W.2d 740, 741 (Minn. Ct. App. 1995) ("In no-fault claims, arbitrators are

limited to deciding issues of fact . . . , reserving interpretation of the law to the courts.

Interpretation and construction of the No-Fault Act, the insurance contract, or both, is a question

for the courts." (citations omitted)).  The problem is that there is a gray area between pure

questions of law and pure questions of fact — a gray area made up of questions involving the application of law to fact, such as the question whether a particular price charged by a particular auto-glass repair shop to repair a particular car was more than "a competitive price that is fair and reasonable within the local industry at large." Minn. Stat. § 72A.201, subd. 6(14). It can be quite difficult to tell whether a question that falls in this gray area is a legal dispute that must be decided by a court or a factual dispute that must be decided by an arbitrator.

The Court has already decided that most of the issues raised by Farmers do not have to be arbitrated. In particular, the Court has ruled on the merits of the challenge in Counts I, II, and V to the legality of the assignments under the anti-assignment clause and the challenge in Count III to the legality of Alpine's pricing scheme under the anti-incentive statute. Those claims seem primarily legal. They involve the general questions whether any Farmers insured can assign the proceeds of her insurance policy and whether the general pricing scheme used by Alpine (and other auto-glass repair shops) violates the anti-incentive statute. These are rather abstract questions, well-suited to declaratory relief, and entirely or primarily legal in nature.

Classifying other questions as "legal" or "factual" may be more difficult. Fortunately, though, the Court need not struggle with that issue in connection with Count VI. Count VI begins by assuming that "Alpine received a lawful assignment" and that Alpine "stands in the shoes of the Insureds." Counterclaim ¶ 45. But then, in the following paragraph, Count VI alleges that the insureds breached the policies "by, among other things, violating the cooperation [and] anti-assignment of interest . . . clauses contained therein." *Id.* ¶ 46. Count VI gives no hint as to how Alpine could have "received a lawful assignment" if the insureds "violated the cooperation [and] anti-assignment" clauses.

-14-

To the extent that Count VI intends to raise yet another challenge to the validity of the assignments, it does indeed raise a legal question, but that question has already been decided against Farmers, and thus that part of Count VI must be dismissed.  It is unclear whether Count VI intends to complain of anything else.  It briefly points to the "waiver and change, competitive bidding and appraisal clauses," but gives no hint of what conduct by the insureds may have violated those clauses.  If Count VI is meant to raise issues unrelated to the assignments, then Count VI is either raising legal issues with insufficient particularity for purposes of Fed. R. Civ. P. 8(a)(2) or raising factual issues that must be arbitrated.  Count VI must therefore be dismissed in its entirety.

Count VII suffers similar problems.  It is as contradictory as Count VI.  Like Count VI, it begins by assuming that Alpine "received lawful assignments" and therefore "stands in the shoes of the Insureds."  Counterclaim ¶ 51.  But, in the next paragraph, it accuses Alpine of violating "the duty of good faith and fair dealing" by (1) "overcharg[ing] the Insureds and [Farmers] for automobile glass repair and replacement" and by (2) "attempt[ing] to frustrate [Farmers's] ability to perform under the Policies."  *Id.* ¶ 52.  Neither of these contentions are explained in any way.

As to the first contention, it is difficult to understand how Alpine *as assignee of the insureds* could have "overcharg[ed] the Insureds."  Obviously, the insureds could not have overcharged themselves.  Moreover, to the extent that this contention complains of Alpine charging prices in violation of alleged pricing contracts with Farmers, it merely repeats what is already alleged in Count IV (discussed below).  As to the second contention, Farmers gives no hint as to how the insureds "attempt[ed] to frustrate [Farmers's] ability to perform under the Policies," unless it was by assigning their rights to proceeds to Alpine.

In sum, to the extent that Count VII is meant to accuse Alpine of breaching pricing contracts with Farmers, it is duplicative of Count IV, and must be dismissed.  To the extent that Count VII is meant to challenge the assignments, it is duplicative of several counts, and it raises an issue on which the Court has already ruled, and must be dismissed.  And to the extent that Count VII is meant to complain of something else, it either fails to plead a legal issue with sufficient clarity for purposes of Fed. R. Civ. P. 8(a)(2), or it raises a factual issue that must be arbitrated.  Count VII must therefore be dismissed in its entirety.

## 2.  Count IV

Count IV presents a different question.  In Count IV, Farmers asserts that, prior to Alpine providing any services to any Farmers insured, Farmers "provided to [Alpine] in written form" a list of "the prices that [Farmers] would pay for the work pursuant to their policies and all applicable law."  Counterclaim ¶ 35.  Farmers further alleges that every time Alpine agreed to replace the auto glass of a Farmers insured, it entered into a "pricing contract" with Farmers to do the job at the price that had been provided to Alpine.  *Id.* ¶ 36.  When Alpine "demand[ed] amounts in excess of the agreed upon amounts for repair and replacement of automobile glass," Farmers alleges, Alpine "breached the pricing contracts."  *Id.* ¶ 37.

The breach-of-contract claim in Count IV differs in important respects from the breach-of-contract claims in Counts VI and VII.  The latter claims were brought against Alpine *as assignee of the insureds*, and the contracts on which they were based were the *insurance contracts* between Farmers and its insureds.  Those claims — which, as noted, are really not claims but defenses — must be arbitrated to the extent that they raise factual issues.  But the

breach-of-contract claim in Count IV is brought against *Alpine itself*, and the contracts on which it is based are the alleged *pricing contracts* between Farmers and Alpine.

To illustrate:  Suppose again that Mr. Whidtenberg, a Farmers insured, is charged $300 for a new windshield, submits the bill to Farmers, has Farmers decline to pay more than $250, and seeks to arbitrate Farmers' decision, claiming that the insurance policy requires Farmers to pay $300.  Farmers could defend that claim by arguing that $300 is not "fair and reasonable within the local industry at large," Minn. Stat. § 72A.201, subd. 6(14), or by arguing that Mr. Whidtenberg was not entitled to any recovery because he breached the cooperation clause. Farmers would be arguing that the insured cannot recover under the insurance policy — and thus Farmers's arguments would have to be arbitrated to the extent that they raised factual issues.

But Farmers could not defend Mr. Whidtenberg's claim by arguing that it had a separate "pricing contract" with Alpine under which Alpine agreed to replace windshields on cars like Mr. Whidtenberg's for $250.  Mr. Whidtenberg was not a party to such a contract.  If he was in fact charged $300, and if $300 was in fact "fair and reasonable," then Farmers would have to pay Mr. Whidtenberg $300 under the insurance contract.  Farmers's remedy would be to sue Alpine for breach of the pricing contract and seek to recover from Alpine the "extra" $50 that Farmers was forced to pay to Mr. Whidtenberg because of Alpine's breach.

If the Court understands Count IV correctly, Farmers is asserting precisely this type of claim against Alpine.  In other words, Farmers is asserting in Count IV that if it owes "Alpine-as-Assignee-of-Insured" $300 under the insurance contract, then "Alpine-as-Vendor" owes Farmers $50 under the pricing contract.  The breach-of-contract claim in Count IV is thus not covered by the mandatory arbitration provisions of the No-Fault Act.  The Act requires

arbitration of claims "for no-fault benefits or comprehensive or collision damage coverage." Minn. Stat. § 65B.525, subd. 1.  But, in Count IV, Farmers is not seeking "no-fault benefits or comprehensive or collision damage coverage" under an insurance policy.  It is instead seeking damages for breach of the pricing contracts.

The Court therefore respectfully disagrees with Judge Noel's conclusion that the No-Fault Act deprives the Court of jurisdiction over Count IV.  That said, the Court is skeptical about the merits of the breach-of-contract claim asserted in Count IV.  If Farmers is alleging that it somehow made a contract offer to Alpine simply by sending Alpine a list of "the prices that [Farmers] would pay," Counterclaim ¶ 35, and that Alpine somehow accepted that offer and thereby created a "pricing contract[]" simply by doing work on the cars of Farmers's insureds, *id.* ¶ 37, then Farmers may have a difficult time surviving a motion for summary judgment.  That question, however, must wait for another day.

## ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Alpine's motion to dismiss counterclaims [Docket No. 14] is GRANTED IN PART AND DENIED IN PART as follows:

1.  Alpine's motion is GRANTED with respect to Counts I, II, III, V, VI, and VII of Farmers's counterclaim.  Counts I, II, III, VI, and VII are DISMISSED WITH PREJUDICE AND ON THE MERITS.  Count V is in part DISMISSED WITH PREJUDICE AND ON THE MERITS and in part DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION, as explained in footnote 1.

    2.  Alpine's motion is DENIED with respect to Count IV of Farmers's counterclaim.


Dated:  December <u>4,</u> 2006                  <u>s/Patrick J. Schiltz        </u>
                                                        Patrick J. Schiltz
                                                        United States District Judge