UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Alpine Glass, Inc.,

Plaintiff,

v.

Illinois Farmers Insurance Company
And Mid-Century Insurance Company,

Defendants.

Civil No. 06-01148 PJS/RLE

**AFFIDAVIT OF MICHAEL REID**

After swearing to tell the truth, Michael Reid states as follows:

1. I am the President of Alpine Glass, Inc. Except as otherwise noted, I make this affidavit of my own personal knowledge. It is being prepared in opposition to Farmers' motion for summary judgment.

2. Alpine is not a member of Farmers' glass repair network. Alpine does not accept Farmers' pricing which is unreasonably low for the Minnesota market and does not reflect the prevailing competitive rate.

3. Alpine has never had a pricing agreement with Farmers. Alpine's only relationship with Farmers is based on the assignments Alpine receives from Farmers' policyholders. Those assignments allow Farmers to step into the policyholders' shoes and collect all proceeds due under the policy. By accepting an assignment in lieu of actual payment, the policyholder is removed from the equation and Alpine is able to submit invoices directly to Farmers. Alpine has not billed any of the policyholders directly for any of the invoices at issue in this lawsuit.

4. From time to time, Alpine receives letters from Farmers' third-party administrator, Safelite, setting forth the amounts that Farmers would like to pay. It is my understanding and belief, that the amounts set forth in these letters are the same as are provided to members of Farmers' network of glass shops. There is nothing in these letters that indicates that they are anything other than notification of what Farmers' wants to pay. Indeed, there is nothing in these letters that leads me to believe Farmers was sending the letter in an effort to negotiate prices for auto glass repair work. We have never anticipated that these letters could have any binding affect on Alpine.

5. Typically, when a customer chooses Alpine to do their automobile glass repair or replacement work, Alpine will make a three-way call with the customer and Farmers' third-party administrator. During the course of those calls, Safelite, the third-party administrator, will typically ask Alpine if we will accept Farmers' predetermined pricing. It is our policy and practice to never accept that pricing. Indeed, we inform the Safelite representative that we do not accept the pricing. As a result, Farmers, through Safelite, is put on notice before we do any work that we are not accepting Farmers' pricing.

6. Sometime in approximately 2003, Safelite began putting language on their confirmation faxes indicating that performance of the work constituted acceptance of the insurer's pricing for that particular job. They did this notwithstanding the fact that they had been told by us that we did not accept the price and notwithstanding the fact that they have both contractual/insurance policy obligations and statutory obligations as it relates to payments.

7. On November 5, 2003, I sent a certified letter to Safelite and to Farmers addressing this language that was added to the confirmation faxes. A copy of that letter is attached to this affidavit as Exhibit A. In that letter, I make it very plain that we do not accept pricing contained on the confirmation faxes or any other document "originated, transmitted or mailed by Safelite." Our position on the fax issue was absolutely clear. According to the return receipt, the letter was received by Farmers on November 10, 2003.

8. Nothing that Alpine has ever done would have given Farmers any legitimate reason to believe that Alpine accepted Farmers' unreasonable pricing. For the time period at issue, there was never a contract or agreement between Farmers and Alpine. The only agreement applicable was the Farmers' insurance policy.

Michael Reid

MISTY D. GRAY
NOTARY PUBLIC
COMMISSION EXPIRES 12-29-08
STATE OF WASHINGTON

Subscribed and sworn to me this
8th day of March, 2007.

Notary Public