## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| ALPINE GLASS, INC., | Case No. 06-CV-1148 (PJS/RLE) |
| Plaintiff, | |
| v. | ORDER |
| ILLINOIS FARMERS INSURANCE COMPANY and MID-CENTURY INSURANCE COMPANY, | |
| Defendants. | |

Charles J. Lloyd, LIVGARD & LLOYD, PLLP, and Joshua P. Brotemarkle, RABUSE LAW FIRM, P.A., for plaintiff.

Steven R. Kluz, STOEL RIVES LLP, and Diane B. Bratvold, BRIGGS AND MORGAN, for defendants.

This is the latest round in the seemingly endless litigation between automobile insurers and auto-glass shops in Minnesota. Auto-glass shops repair or replace the windshields of customers and bill the customers' insurers. The insurers often refuse to pay the bills and accuse the auto-glass shops of trying to gouge them by charging ridiculously high prices for simple repairs. The auto-glass shops cry foul and accuse the insurers of trying to coerce consumers to accept shoddy work from cut-rate shops. Occasional attempts by the Minnesota Legislature to address this long-running dispute seem only to trigger additional rounds of litigation.

In this particular case, Alpine Glass, Inc. ("Alpine") sued defendants Illinois Farmers Insurance Company and Mid-Century Insurance Company (collectively "Farmers") seeking to compel arbitration of 1120 "short-pay" claims — that is, claims for the difference between what Alpine billed and what Farmers paid. Farmers counterclaimed, seeking a declaration that it was

not liable to Alpine.  After dismissing Farmers's counterclaims, the Court ordered the parties to arbitrate the short-pay claims in a single consolidated proceeding, and the arbitrator awarded over $400,000 to Alpine.  Farmers now moves to vacate that award.  For the reasons described below, Farmers's motion is denied.

## I.  BACKGROUND

Farmers insures automobile owners in Minnesota.  Alpine repairs and replaces auto glass.  Under Minnesota law, an insured who has purchased auto-glass coverage and who needs repairs does not have to use a vendor recommended by the insurer.  Rather, the insured is free to select any auto-glass shop to do the work.  Minn. Stat. § 72A.201, subd. 6(14)-(16).  Thus, any insured of Farmers has the right to hire Alpine to repair her auto glass.

At the same time, Minnesota law protects the insurer from having to pay more than "a competitive price that is fair and reasonable within the local industry at large."  Minn. Stat. § 72A.201, subd. 6(14).  Thus, if Alpine charges more than "a competitive price that is fair and reasonable" for the services that it provides to a Farmers insured, Farmers is under no obligation to pay the full amount charged by Alpine (unless Farmers has agreed, in an insurance policy, to pay more than "a competitive price that is fair and reasonable").

When a customer brings her car to Alpine for repair or replacement of a windshield, Alpine quotes her a price, and Alpine then bills that amount to the customer's insurer.  Alpine promises the customer that, if the amount that it bills to the insurer is later found to be excessive, and the insurer pays only part of the invoice, Alpine will eat the difference — that is, the customer will not be obligated to pay anything.  In return, the customer assigns the proceeds of

her insurance policy to Alpine. Thus, Alpine takes on the responsibility of negotiating with the insurer and, if necessary, suing the insurer to enforce the policy. Under Minnesota law, insurers are required to pay glass shops directly for auto-glass work done for insureds. Minn. Stat. § 72A.201, subd. 6(14).

This lawsuit arises out of a dispute between Farmers and Alpine about how much Farmers is obligated to pay Alpine for services rendered to insureds of Farmers. Alpine regularly sends bills to Farmers for work performed on the cars of Farmers insureds, and Farmers regularly refuses to pay those bills in full. Alpine decided to take action to recover these short pays. In pursuing these recoveries, Alpine stands in the shoes of the Farmers insureds who have assigned their claims to Alpine. Thus, Farmers and Alpine agree that, in general, these short-pay disputes must be arbitrated under Minnesota's No-Fault Automobile Insurance Act ("No-Fault Act"), Minn.Stat. §§ 65B.41-65B.71. *See Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 798 (Minn. 2004).

This litigation began when Alpine sued Farmers in state court, seeking a declaratory judgment that its numerous short-pay claims — 1120 such claims totaling almost $500,000 in alleged short pays — should be consolidated into a single arbitration proceeding pursuant to the No-Fault Act. Farmers removed the action to this Court, answered the complaint, and filed a seven-count counterclaim. Alpine moved to dismiss all seven counts of the counterclaim, and, in December 2006, the Court granted Alpine's motion as to six of the seven counterclaims. *See Alpine Glass, Inc. v. Ill. Farmers Ins. Co.*, No. 06-1148 (PJS/RLE), 2006 WL 3486996 (D. Minn. Dec. 4, 2006) [Docket No. 64].

To a substantial extent, Farmers's counterclaims were based on the argument that, under Minnesota law, Farmers's insureds could not assign the proceeds of their automobile-insurance policies to Alpine. This Court held that the assignments were valid and dismissed Farmers's counterclaims to the extent that they were premised on Farmers's argument to the contrary. *Id.* at *2-3. This "assignability" issue was litigated by various auto-glass shops and various insurers in front of various federal and state judges, most of whom held that the assignments were invalid. Finally, in July 2009, the Minnesota Supreme Court settled the issue by holding that the assignments were indeed valid. *See Star Windshield Repair, Inc. v. Western Nat'l Ins. Co.*, 768 N.W.2d 346 (Minn. 2009).

The other major dispute raised by Farmers's counterclaims was whether Alpine had violated Minnesota's anti-incentive statute, Minn. Stat. § 325F.783(a), by promising each customer that, if her insurer did not pay Alpine's bill in full, the customer would not be responsible for the difference. Farmers argued that Alpine's practice violated the anti-incentive statute because Alpine gave a "rebate" or "credit" to a customer in order to induce the customer to buy auto-glass services. The Court rejected Farmers's argument, finding that "Alpine's practice contradicts neither the language nor purpose of the anti-incentive statute." *Alpine Glass*, 2006 WL 3486996, at *6.

The only one of Farmers's counterclaims to survive Alpine's motion to dismiss was Count IV, in which Farmers asserted that, prior to Alpine providing any services to any Farmers insured, Farmers "provided to [Alpine] in written form" a list of "the prices that [Farmers] would pay for the work pursuant to their policies and all applicable law." Counterclaim ¶ 35. Farmers further alleged that every time Alpine repaired or replaced the auto glass of a Farmers insured, it

implicitly entered into a pricing contract with Farmers to do the job at the price that had been provided to Alpine. *Id*. ¶ 36. When Alpine "demand[ed] amounts in excess of the agreed upon amounts for repair and replacement of automobile glass," Farmers alleged, Alpine "breached the pricing contracts." *Id*. ¶ 37.

The Court held that this particular claim was not arbitrable. As the Court explained:

> The [other counterclaims] were brought against Alpine *as assignee of the insureds*, and the contracts on which they were based were the *insurance contracts* between Farmers and its insureds. Those claims . . . must be arbitrated [under the No-Fault Act] . . . . But the breach-of-contract claim in Count IV is brought against *Alpine itself*, and the contracts on which it is based are the alleged *pricing contracts* between Farmers and Alpine.

*Alpine Glass*, 2006 WL 3486996, at *9 (emphasis in original). The Court made clear, however, that it was "skeptical about the merits of the breach-of-contract claim asserted in Count IV" and that "Farmers may have a difficult time surviving a motion for summary judgment" on that count. *Id.* at *10.

Apparently acting on the belief that the best defense is a good offense, Farmers responded to the Court's skepticism by moving for summary judgment in *its* favor on Count IV of its counterclaim, as well as for partial summary judgment on Alpine's declaratory-judgment action. Docket No. 66. Alpine countered by moving to compel a consolidated arbitration of the 1120 short-pay claims. Docket No. 74. On March 30, 2007, the Court held a hearing on both Farmers's motion for summary judgment and Alpine's motion to compel arbitration.

At the hearing, the Court denied Farmers's motion for summary judgment on Count IV, and instead granted summary judgment to Alpine. For reasons explained at the hearing (and

reflected in the transcript), the Court dismissed as near-frivolous Farmers's claim that, by sending an uninvited blast fax to auto-glass shops throughout Minnesota announcing the prices that Farmers was willing to pay, Farmers somehow created a "contract" with those auto-glass shops. Moreover, the Court ruled that Farmers could not raise as a defense in a no-fault arbitration proceeding between Farmers and one of its insureds (or Alpine standing in the shoes of that insured) the existence of an alleged pricing contract between Farmers and Alpine, when the insured was not a party to the alleged pricing contract, and Alpine was not a party to the insurance contract. Finally, the Court granted Alpine's motion to compel arbitration of the short-pay claims. These rulings were embodied in a written order entered immediately after the hearing. Docket No. 106.

There was an additional issue raised at the March 30, 2007, hearing — an issue that received relatively little attention in the briefs or at the hearing. As will be further explained below, the vast majority of the short-pay claims involve insurance policies that contain two provisions addressing auto-glass coverage: the MN008 endorsement and the E1400 endorsement. All Farmers policies contain the MN008 endorsement; the policyholder must pay an additional premium if she wants to add the E1400 endorsement. The parties dispute which of those two endorsements sets the limit on Farmers's liability for auto-glass coverage. Farmers argues that only the MN008 sets a limit of liability, and that the E1400 merely waives the deductible that would otherwise apply. Alpine argues that the E1400 both waives the deductible and replaces the limit of liability in the MN008 with a higher limit. At the March 30, 2007, hearing, Farmers asked the Court to decide this issue, but the Court declined to do so, leaving the issue to be addressed in the first instance by the arbitrator.

Farmers appealed to the Eighth Circuit, seeking review of rulings contained in the Court's written orders of December 4, 2006, and March 30, 2007. Meanwhile, the short-pay claims proceeded to arbitration, as the Court had ordered. Farmers twice attempted to postpone the arbitration until the Eighth Circuit decided Farmers's appeal. Farmers No-Fault Rule 5(f) Response Letter (May 11, 2007), Kluz Aff. at Ex. J [Docket No. 115-17];[1] Farmers No-Fault Rule 15 Mot. to Postpone Arb., Kluz Aff. at Ex. K [Docket No. 115-18]. The arbitrator declined to postpone the arbitration. Letter from Am. Arb. Ass'n to Parties (June 28, 2007), Kluz Aff. at Ex. L [Docket No. 115-19].

Prior to arbitration, Farmers also asked the arbitrator to declare which endorsement — the MN008 or the E1400 — he would apply in determining the extent of Farmers's liability. Farmers Mot. Determination, Kluz Aff. at Ex. M [Docket No. 115-20]. The arbitrator did not respond to Farmers's request prior to the arbitration, and, on the first day of the hearing, the arbitrator said that he would take the issue under advisement. Arb. Tr. at 15, Kluz Aff. at N [Docket No. 115-21]. On the last day of the hearing, Farmers again inquired about which endorsement would be applied. Arb. Tr. at 431 [Docket No. 115-30]. Once again, the arbitrator declined to announce a decision, saying only that he had taken the issue under advisement. *Id*.

On October 2, 2007, the arbitrator issued an award of $400,436.63 in favor of Alpine. Arb. Award at 4, Kluz Aff. at Ex. A [Docket No. 115-1]. In his award, the arbitrator said that it

---

[1]The Court will refer throughout this order to various exhibits, many of which the parties submitted at the arbitration. All referenced exhibits are attached to the Kluz Affidavit. Docket Nos. 115-17. Citations to Farmers's arbitration exhibits will be abbreviated as "Kluz Aff. at Ex. O, Farmers Arb. Ex. __." Citations to Alpine's arbitration exhibits will be abbreviated as "Kluz Aff. at Ex. P, Alpine Arb. Ex. __." All other record citations to items not used as arbitration exhibits will be abbreviated as "Kluz Aff. at Ex. __."

had not been necessary for him to decide whether the MN008 or the E1400 applied, as "the award is the same regardless of which policy endorsement is applicable."  Arb. Award at 3 n.1. The arbitrator specifically found that "Farmers was not paying a rate based upon competitive pricing in the auto-glass-replacement industry in Minnesota," Arb. Award at 4, and that "Farmers has breached the terms of its insurance policy regardless of which limit of liability is applied." *Id*.  The arbitrator subsequently issued a supplemental award to Alpine for pre-award interest. Supp. Arb. Award, Kluz Aff. at Ex. B [Docket No. 115-2].

Farmers moved to vacate the arbitrator's award on January 4, 2009.  Docket No. 113. The Court initially stayed proceedings pending the Eighth Circuit's decision on Farmers's appeal of the Court's earlier orders.  Docket No. 126.  After the Eighth Circuit dismissed Farmers's appeal for lack of jurisdiction, the Court again stayed proceedings pending the Minnesota Supreme Court's decision in the *Star Windshield* case regarding the validity of assignments of proceeds of automobile-insurance policies.  Docket No. 133.  The Court lifted the stay on August 4, 2009, and ordered the parties to file memoranda regarding Farmers's motion to vacate. Docket No. 138.

## II.  ANALYSIS

### A.  Standard of Review

Under the No-Fault Act, arbitrators decide issues of fact, and courts decide issues of law. *Johnson v. Am. Family Mut. Ins. Co.*, 426 N.W.2d 419, 421 (Minn. 1988).  An arbitrator's findings of fact are "conclusive."  *Barneson v. W. Nat'l Mut. Ins. Co.*, 486 N.W.2d 176, 177 (Minn. App. 1992).  "Whether the record supports an arbitrator's findings is not an issue for our

review." *Liberty Mut. Ins. Co. v. Sankey*, 605 N.W.2d 411, 413 (Minn. Ct. App. 2000). The Court reviews de novo any questions of law decided by the arbitrator. *Weaver v. State Farm Ins. Co.*, 609 N.W.2d 878, 882 (Minn. 2000). This approach reflects the state's goal of consistency in interpretation of the No-Fault Act. *Id.*

### *B. Endorsements*

As mentioned above, the vast majority of the short-pay claims involve Farmers policies that contain two endorsements addressing auto-glass coverage: the MN008 and the E1400. The parties dispute which of these endorsements sets the limit of Farmers's liability for auto-glass coverage. Farmers contends that the MN008 controls in all cases. Alpine contends that when an insured purchased the E1400 endorsement, that endorsement controls.

Every policy that Farmers issued to the insureds in this case contained the MN008, which uses language similar to that found in Minn. Stat. § 72A.201.[2] The MN008 provides, in relevant part:

> For glass losses, the maximum amount that we will pay for repair or replacement is the prevailing competitive price. The competitive price includes the cost of repair or replacement including labor rates, parts and material. You may choose your own repair facility or upon your request we will identify the facilities that will perform the repairs for the prevailing competitive price.

MN008 Endorsement, 3rd ed., Kluz Aff. at Ex. O, Farmers Arb. Ex. 2 [Docket No. 116-2].

---

[2]As noted, Minnesota law requires insurers to pay, at a minimum, "a competitive price that is fair and reasonable within the local industry at large" for auto-glass claims. Minn. Stat. § 72A.201, subd. 6(14).

The vast majority of the policies issued by Farmers to the insureds in this case also contained a second endorsement — the E1400. An insured had to pay an additional premium for the E1400. The E1400 has been substantially revised over time, but during the period relevant to this litigation it read:

> For an additional premium, it is agreed that any deductible applying to Coverage F – Comprehensive does not apply to safety glass.
>
> Our limit of liability for loss is the amount necessary to repair or replace safety glass.

E1400 Endorsement, 1st ed., Kluz Aff. at P, Alpine Arb. Ex. 26 [Docket No. 117-8].

The parties agree that the MN008 — standing alone — would cap Farmers's liability for auto-glass claims at "the prevailing competitive price." The parties further agree that the E1400 — standing alone — would cap Farmers's liability for auto-glass claims at "the amount necessary to repair or replace safety glass." Finally, the parties agree that the "amount necessary" limit of the E1400 is more generous than the "prevailing competitive price" limit of the MN008.

It is not clear to the Court why this is true. In particular, the Court does not understand why it would ever be "necessary" to pay more than the "prevailing competitive price." As far as the Court can determine, no court has actually held that the "amount necessary" limit is more generous than the "prevailing competitive price" limit. Moreover, despite being pressed repeatedly at oral argument, the attorneys for Alpine and Farmers — attorneys who are among the most experienced auto-glass litigators in America — were unable to explain how assessing the "prevailing competitive price" under the MN008 differs from assessing the "amount

necessary" under the E1400 — or how either differs (if at all) from assessing "a competitive price that is fair and reasonable within the local industry at large" under Minn. Stat. § 72A.201, subd. 6(14). But the attorneys were adamant that the E1400 limit is more generous than the MN008 limit, and the Court sees no reason to reject their agreement on that point.

Alpine, of course, argues that, when a policyholder purchased the E1400, she purchased the higher limit of liability on auto-glass coverage. Farmers disagrees, for two reasons:

First, Farmers argues that, even if both the MN008 and the E1400 provide limits on liability, the MN008 is more specific than the E1400, and the more specific provision trumps the more general. Farmers is correct on the law, but not on the facts. It is indeed true that, when two provisions of a contract address the same issue in conflicting ways, the more specific governs over the more general. *See Medtronic, Inc. v. ConvaCare, Inc.*, 17 F.3d 252, 255 (8th Cir. 1994) (citing *Burgi v. Eckes*, 354 N.W.2d 514, 519 (Minn. Ct. App. 1984) ("The specific terms of a contract govern over the general in the event of conflict."). But the MN008 is not more specific than the E1400.

The E1400 states: "Our limit of liability for loss is the amount necessary to repair or replace safety glass." The MN008 states: "the maximum amount that we will pay for repair or replacement is the prevailing competitive price." The level of specificity of these two liability limits is virtually identical. True, the MN008 adds a sentence that clarifies that "prevailing competitive price" includes "the cost of repair or replacement including labor rates, parts and material." This may make the liability limit of the MN008 clearer than it would be without the

elaboration, but it does not make the liability limit of the MN008 more specific than the liability limit of the E1400.

Suppose, for example, that one clause in a contract provides that the seller will, in return for $5, give the buyer "three pounds of fruit." Suppose further that another clause in the same contract provides that the seller will, in return for the same $5, give the buyer "three pounds of apples." The second provision is more specific than the first, and thus, if the seller gives the buyer three pounds of oranges, he will breach the contract.

Suppose instead that the first clause in the contract provides that the seller will, in return for $5, give the buyer "three pounds of apples." Suppose further that another clause in the same contract provides that the seller will, in return for the same $5, give the buyer "three pounds of oranges." The first and second provisions are equally specific, and that is true even if the contract does not define "apple," but does define "orange." "Orange" does not become more specific than "apple" by virtue of being defined. Similarly, the "prevailing competitive price" limit in the MN008 does not become more specific than the "amount necessary" limit in the E1400 by virtue of being defined.

Farmers's second argument is that the MN008 and the E1400 do not, in fact, conflict, because the E1400 only serves to waive the deductible for auto-glass work, and does not set a limit of liability at all. The plain language of the E1400 refutes Farmers's interpretation. The E1400 consists of two sentences. The first sentence provides: "For an additional premium, it is agreed that any deductible applying to Coverage F – Comprehensive does not apply to safety glass." This sentence waives the deductible, and, if the E1400 stopped there, Farmers would be

correct. But the E1400 does not stop there. Instead, it continues for another sentence: "Our limit of liability for loss is the amount necessary to repair or replace safety glass."

Farmers has no explanation — or at least no plausible explanation — for how a policy provision that begins with the words "[o]ur limit of liability for loss is . . ." does not set a limit of liability for loss. Farmers's interpretation of the E1400 would render one of its two sentences a complete nullity. Under Minnesota law, though, a contract "must be interpreted in a way that gives all of its provisions meaning." *Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539, 543 (Minn. 1995).

It should also be noted that Farmers's past conduct has been inconsistent with the position that it now takes before this Court. When Farmers later issued a special endorsement waiving deductibles for glass repair (as opposed to glass replacement), it amended the E1400 by removing any mention of "repair" from the second sentence. E1400 Endorsement, 2d ed., Kluz Aff. at P, Alpine Arb. Ex. 27 [Docket No. 117-8]. At that time, the E1400 remained unchanged in every other respect. Later, Farmers amended the E1400 again to altogether remove the second sentence (that is, the limit-of-liability language), leaving only the first sentence (that is, the waiver-of-deductible language). E1417 Endorsement, 1st ed., Kluz Aff. at P, Alpine Arb. Ex. 28 [Docket No. 117-8]. This drafting history makes clear that Farmers itself recognized that the second sentence of the E1400 had meaning, and that the E1400 did not function solely as a deductible waiver. Farmers has offered no explanation of why it included, amended, and then removed the limit-of-liability language from the E1400 if that language did not, in fact, limit liability.

In short, the Court finds that, when a Farmers policy includes both the MN008 endorsement and the E1400 endorsement, the E1400 governs over the MN008, and thus Farmers's limit of liability for auto-glass coverage is "the amount necessary to repair or replace safety glass," and not "the prevailing competitive price."[3] Moreover, pursuant to the parties' agreement, the Court finds that the limit of liability under the E1400 is more generous than the limit of liability under the MN008.

### B. Vacatur

The Court has just decided the question of whether the MN008 or the E1400 controls when both endorsements appear in the same policy. As described above, Farmers asked the Court to make this decision before ordering arbitration. The Court should have done so. True, as the Eighth Circuit said when dismissing Farmers's appeal of earlier orders of this Court, "there is no per se requirement under Minnesota's No-Fault Act that courts resolve any legal issues before ordering arbitration." *Alpine Glass, Inc. v. Ill. Farmers Ins. Co.*, 531 F.3d 679, 683 n.4 (8th Cir. 2008). But that is certainly the better practice, and the Court should have followed it. *See Costello v. Aetna Cas. & Surety Co.*, 472 N.W.2d 324, 326 (Minn.1991) ("Where the coverage dispute arises on a motion to compel arbitration or to enjoin arbitration, the court ought to decide the issue in the first instance.").

---

[3]The Court does not find the policy ambiguous. The Court notes, though, that if the policy were ambiguous, the ambiguity would have to be resolved against Farmers, which drafted the policy. *General Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147, 151 (Minn. Ct. App. 2001). The parties agree that the E1400 provides a greater level of coverage than the MN008. To the extent that any ambiguity exists, then, the Court has to apply the more generous coverage of the E1400.

The question now is whether this Court's failure to resolve the legal dispute over the conflicting endorsements before ordering arbitration means that the arbitrator's award must be vacated. In its briefs, Farmers argued that the failure of a court to resolve any legal issue prior to any arbitration means that the arbitrator's award must *always* be vacated. Farmers Br. Vacate at 16. That is clearly not the law. Rather, as Farmers conceded at oral argument, when a court does not decide a legal issue before an arbitration, that legal issue must be decided in the first instance by the arbitrator, and the arbitrator's decision is then reviewed de novo. "[A]n arbitrator need not refrain from deciding a question simply because it is a legal question. But an arbitrator's decision on a legal question is subject to de novo review by the district court." *Gilder v. Auto-Owners Ins. Co.*, 659 N.W.2d 804, 807 (Minn. Ct. App. 2003). *Accord Safeco Ins. Co. v. Goldenberg*, 435 N.W.2d 616, 621 (Minn. Ct. App. 1989).

Obviously, then, the fact that the arbitrator decided a legal issue does not require that his award be vacated. If the reviewing court *agrees* with the arbitrator's decision, then the award can be confirmed. Even if the reviewing court *disagrees* with the arbitrator's decision, the award can be confirmed if the arbitrator's legal error was harmless. In this case, then, the Court must vacate the arbitrator's award in favor of Alpine only it the arbitrator's legal determination was both incorrect and prejudicial to Farmers.

Before addressing those issues, the Court notes that Alpine has argued that the question of what endorsement applies is not a legal question at all, but rather a question of fact for the arbitrator. And Alpine is correct that a recent decision of the Minnesota Court of Appeals — *Glass Service Company v. Illinois Farmers Insurance Company*, 2007 WL 1815781 (Minn. Ct. App. June 26, 2007) — holds exactly that:

> The district court could also have determined that the arbitrators
> based their awards on a conclusion that the E1400 endorsement
> controlled and awarded damages on the basis that the price charged
> by respondent was the "amount necessary to repair." The
> arbitrators were presented with appellant's insurance policy and the
> applicable endorsements, and were empowered with the authority
> to determine how much appellant owed respondent under the
> issued policy. This determination included a consideration of the
> applicable policy provisions. The nature of the dispute fell within
> the arbitrators' authority to resolve. The fact that the arbitrators
> did not explain their reasoning in their findings of fact is consistent
> with the nature of arbitration proceedings because an arbitrator's
> findings of fact are final.

*Id.* at *9.

The problem, though, is that *Glass Service Company* simply cannot be reconciled with a long line of decisions by the Minnesota Supreme Court (and the Minnesota Court of Appeals) that make it clear that, under the No-Fault Act, questions about the existence and scope of coverage are legal questions that must be determined by a court, not factual questions that must be determined by the arbitrator. *See, e.g.*, *Johnson*, 426 N.W.2d at 421 ("[W]e hold that [under the No-Fault Act], arbitrators are limited to deciding issues of fact, leaving the interpretation of the law to the courts. In this case, the measure of the gap between Johnson's damages and the available liability insurance is an issue of law which must be determined by the court, not by the arbitration panel."); *Costello*, 472 N.W.2d at 326 ("The *Johnson* court held that on a motion to vacate an arbitrator's award, a reviewing court ought to examine de novo a decision by the arbitrator on a coverage issue. . . . Where the coverage dispute arises on a motion to compel arbitration or to enjoin arbitration, the court ought to decide the issue in the first instance.").

A determination as to whether the MN008 or the E1400 applies is a legal determination about the scope of coverage; as a result, an arbitrator's decision about that issue must be reviewed de novo.

Turning to the arbitrator's decision: The arbitrator in this case did not purport to decide whether the MN008 or the E1400 applied. Rather, the arbitrator concluded that "Farmers has breached the terms of its insurance policy regardless of which limit of liability is applied." Arb. Award at 4. This necessarily means that the arbitrator found that the amounts *paid by Farmers* did not even meet the lower limit of liability in the MN008. If the arbitrator had stopped there, the Court would not review his decision. As the parties agree, an arbitrator's decision that the amount paid to Alpine by Farmers was below "the prevailing competitive price" would be a factual decision and thus unreviewable by this Court.

But the arbitrator did not stop there. He went on to issue an award to Alpine that was less than Alpine requested. Alpine sought $476,703.13; it was awarded $400,436.63. Obviously, then, the arbitrator must have applied *some* limit of liability. Alpine argued before the arbitrator that it did not matter whether he applied the MN008 or the E1400, as the prices *charged by Alpine* were below the lower limit in the MN008. Clearly, the arbitrator did not agree, as he shaved $76,266.50 off of Alpine's request. Logically, then, the arbitrator must have decided either that (1) the lower MN008 limit applied, and Alpine's charges exceeded it by $76,266.50, or (2) the higher E1400 limit applied, and Alpine's charges exceeded it by $76,266.50. In short, the arbitrator *must* have decided the legal question of what endorsement applies.

The Court is thus left in an awkward position. The Court knows that the arbitrator made a legal decision, notwithstanding his suggestion to the contrary. The Court must review that

legal decision de novo. But the Court does not know what that legal decision *was* — that is, the Court does not know whether, in reducing Alpine's award, the arbitrator applied the MN008 limit or the E1400 limit (or whether the arbitrator thought that the two limits were the same).

Fortunately, though, this uncertainty does not require that the arbitrator's award be vacated. The Court has found that the E1400 applies. The parties agree that the E1400 provides a higher limit of liability than the MN008. If the arbitrator applied the E1400, then the Court agrees with his decision, and need not vacate his award. If the arbitrator applied the MN008, then the Court disagrees with his decision, but the only one who could have been harmed by that decision is Alpine, and Alpine is not complaining. For these reasons, the Court need not vacate the award at Farmers's request.[4]

---

[4]Farmers also argues that the Court must vacate the award because the arbitrator failed to stay or postpone the arbitration. Under Minnesota law, a court must vacate an arbitration award when the arbitrator "refused to postpone the hearing upon sufficient cause being shown." Minn. Stat. § 572.19, subd. 1(4). At times, Farmers seems to argue that the arbitrator was required to postpone the arbitration until this Court had a change of heart and ruled on the conflicting-endorsements issue. At other times, Farmers seems to argue that the arbitrator was required to postpone the arbitration until the Eighth Circuit ruled on Farmers's appeal.

Both arguments are meritless. As to this Court, nothing in Minnesota law required the Court to rule on the conflicting endorsements issue prior to the arbitration. The Court decided to leave the issue to the arbitrator to decide in the first instance, and then review the arbitrator's determination de novo. The arbitrator was not required to sit around, year after year, and wait for the Court to change its mind. As to the appellate court, the Eighth Circuit ultimately determined that it lacked jurisdiction to consider the conflicting-endorsements issue or any other issue until the arbitration had been completed and this Court had been asked to confirm or vacate the award. *Alpine Glass*, 531 F.3d at 681. Thus, the arbitrator's refusal to postpone the arbitration caused no prejudice whatsoever to Farmers.

*D. Assignment*

As described above, the consolidated arbitration involved 1120 claims of Farmers insureds who hired Alpine to repair or replace their auto glass and then assigned their claims against Farmers to Alpine. At the arbitration, Alpine was unable to produce executed assignments for 91 of these insureds. Farmers argued that the arbitrator should make no award with respect to these 91 claims because Alpine had failed to prove that it had received assignments. The arbitrator disagreed. Farmers now asks this Court to order the arbitrator to recalculate his award, this time excluding the 91 challenged claims.

The parties agree that the question of whether an insured assigned his rights to proceeds under the policy to Alpine is a question of fact. Alpine argues that, because it is a question of fact, and because that question of fact was decided by the arbitrator, this Court may not review the arbitrator's decision — just as this Court may not review any other factual findings of an arbitrator. Farmers disagrees, arguing not only that this issue of fact must be decided by the Court, but that this issue of fact should have been decided by the Court before it ordered arbitration.

The Court did not decide this question before ordering the parties to arbitrate for the simple reason that no one *asked* the Court to decide this question. In its briefs, Farmers makes the implausible argument that, although no one asked this Court to make a decision about these 91 assignments prior to arbitration, the fact that the Court did not do so means that the award *must* be vacated. At oral argument, though, Farmers backed off this position, and argued instead

that the Court must review the arbitrator's decision about the 91 assignments de novo, based on the record before the arbitrator.

In support of its (revised) position, Farmers misleadingly quotes from the Eighth Circuit's opinion in Farmers's appeal of this Court's earlier orders. In dismissing Farmers's appeal, the Eighth Circuit commented that "[e]ach of the issues raised [on] appeal . . . [including] whether Alpine Glass has standing to assert the short-pay claims . . . are issues of law that this Court can review *de novo* following a judgment on the merits." *Alpine Glass*, 531 F.3d at 685. But in referring to "whether Alpine Glass has standing to assert the short-pay claims," the Eighth Circuit was not referring to the evidentiary dispute over whether 91 insureds had executed assignments. That issue was not before the Eighth Circuit, because, as noted, that issue had never been mentioned before this Court. Rather, the Eighth Circuit was referring to this Court's decision that, under Minnesota law, an insured may assign the proceeds of an automobile-insurance policy. The Eighth Circuit was simply commenting that, after the arbitrator issued his award, and after this Court reviewed that award, the Eighth Circuit could review de novo this Court's holding about the validity of the assignments.[5]

The assignment issue that Farmers now presents to the Court — for the first time — is not whether assignments to Alpine were *valid*, but whether assignments to Alpine were made *at all*. And although it is clear that this is a factual question, it is less clear whether this is a factual question for the arbitrator or for the Court.

---

[5]Now that the Minnesota Supreme Court has settled this issue — and agreed with this Court that such assignments are valid — the Eighth Circuit will presumably not be asked to consider the validity of the assignments under Minnesota law.

Alpine is correct that, as a general matter, courts have no authority to make or review factual findings in cases proceeding under the No-Fault Act. The Minnesota Supreme Court has recognized one exception, however: When the question of whether coverage exists for a claim under an insurance policy turns on a question of fact, that question of fact must be decided by the court. *See Costello*, 472 N.W.2d 324.

In *Costello*, the policyholder (Costello) was injured in a car accident by a driver who was allegedly underinsured. The liability limit of the driver's policy was $100,000; Costello alleged that he suffered more than $100,000 in injuries. Costello sued his own insurer, seeking to compel arbitration of his right to recover underinsured-motorist benefits under his own policy. The Minnesota Supreme Court held that Costello had no right to compel arbitration unless he had, in fact, been injured by an underinsured motorist — and that Costello had not, in fact, been injured by an underinsured motorist unless he had suffered more than $100,000 in damages. Because the question of how much in damages Costello suffered was "a precondition to coverage," the Minnesota Supreme Court held that the question "must be decided by the court," not the arbitrator. *Id.* at 326. Specifically, "[t]he court must make an initial determination that Costello's damages are greater than the limit on [the other driver's] bodily injury liability coverage, which the parties agree is $100,000." *Id.*

In this case, the factual question of whether the 91 insureds executed assignments does not go to the existence of coverage, as did the factual question of whether Costello suffered more than $100,000 in damages. Farmers does not dispute that all 91 claimants were insured by Farmers and have the right to arbitrate any dispute arising out of an auto-glass claim. *See* Minn. Stat. § 65B.525, subd. 1; *Ill. Farmers Ins. Co.*, 683 N.W.2d 792. Yet the factual question in this

case is nevertheless analogous to the factual question in *Costello*. The reasoning of the Minnesota Supreme Court in *Costello* was essentially as follows: (1) a court (not an arbitrator) must decide whether an insured has the right to compel the insurer to arbitrate a claim; (2) the insured does not have the right to compel arbitration unless the claim was covered under the policy; and therefore (3) if coverage turns on an issue of fact, a court must decide that issue of fact. Similarly, in this case: (1) this Court (not an arbitrator) must decide whether Alpine has the right to compel Farmers to arbitrate a short-pay claim; (2) Alpine does not have the right to compel arbitration unless it has received an assignment of that claim from an insured; and therefore (3) if the existence of an assignment turns on an issue of fact, the Court must decide that issue of fact.

In short, the Court agrees with Farmers that, under *Costello*, although the question of whether the 91 insureds assigned their claims to Alpine is a question of fact, it is a question of fact that must be decided by this Court. Had the issue been raised prior to the arbitration, the Court would have decided it then. But because the issue was not raised until the arbitration, the Court will review de novo the arbitrator's factual finding that the 91 insureds assigned their claims to Alpine.

The parties agree that, in conducting this review, the Court should confine itself to the record before the arbitrator. Having reviewed that record, the Court finds that Alpine has established, by a preponderance of the evidence, that the 91 insureds did, in fact, assign their claims to Alpine. In every one of the 1120 short-pay claims that were arbitrated — including every one of the 91 challenged claims — Farmers made a partial payment directly to Alpine. Arb. Tr. at 43 [Docket No. 115-22]. Farmers's national claims manager, Michael Keller,

testified that although Farmers does not require a signed *assignment* in order to process an invoice, it does require that a *work order* be signed by the policyholder or the policyholder's spouse before the invoice can be processed. Arb. Tr. at 368 [Docket No. 115-28]. Moreover, Keller testified that Farmers instructs Safelite, its third-party claims administrator, to look for a signed payment authorization (which apparently is usually part of a work order) before it will send any payment directly to an auto-glass shop. Arb. Tr. at 369.

The work-order form used by Alpine contained the following payment-authorization language:

> Replacement or repair of the glass in my automobile has been done to my satisfaction. I have insisted that, where possible, Alpine Glass, Inc. use parts and materials from original equipment manufacturers in the replacement of my automobile glass. I authorize my insurance company to release policy, coverage and other information to Alpine Glass, Inc., hereby authorize and direct my insurance company to pay this invoice to Alpine Glass, Inc. and *I assign any and all claims in connection with this automobile glass installation or repair against my insurance company and all policy proceeds due for their installation or repair to Alpine Glass, Inc.* I agree that if my insurer should ignore this directive to pay and the assignment of the policy proceeds and issue payment to me that I will immediately forward payment to Alpine Glass, Inc. by either endorsing the check that I receive over to Alpine Glass, Inc. or paying Alpine Glass, Inc. an amount equal to what I receive. I agree to pay my deductible, if any, myself. If I do not have insurance coverage, I agree to pay for the work myself.

Sample Alpine Work Order, Kluz Aff. at Ex. O, Farmers Arb. Ex. 9 [Docket No. 116-5] (emphasis added). Directly below this paragraph are the words "PAYMENT AUTHORIZATION," followed by a space for the customer's signature and date. Significantly,

as Keller admitted, the assignment language on Alpine's work-order form was "basically together with the payment authorization. . . . In fact, it says payment authorization." *Id*.

Michael Reid, Alpine's president, confirmed that Safelite would not issue any payment on a claim if it did not have a signed payment authorization for that claim. He testified that in such cases — which occurred "many" times — Alpine "would then get a letter from — a letter or a notification, a fax or a phone call, from Safelite that we needed to have a signature from the insured in order to get paid." Arb. Tr. at 40-41 [Docket Nos. 115-21 and 115-22].

In sum, the evidence demonstrates — and Farmers's national claims manager admits — that Alpine used a work order that combined the payment authorization and the assignment in the same paragraph. When an insured executed the payment authorization, she necessarily executed the assignment. Because Farmers made partial payments on all 91 of the disputed claims, and because Farmers would not have made those partial payments unless its third-party administrator had in hand a signed authorization/assignment, it is more likely than not that Alpine received a valid assignment of all 91 disputed claims.

### E. Breach

Farmers also seeks to challenge the arbitrator's finding that "Farmers was paying a rate not based upon competitive pricing in the auto glass replacement industry in Minnesota," Arb. Award at 4, and the arbitrator's finding that "Farmers has breached the terms of its insurance policy regardless of which limit of liability is applied." *Id*. The problem for Farmers is that, as Farmers admits, these are findings of fact, and under the No-Fault Act, an arbitrator's findings of fact are "conclusive." *Barneson*, 486 N.W.2d at 177.

Farmers attempts to overcome this hurdle by repackaging what is an issue of fact — "Did Farmers breach the insurance policy?" — as an issue of law — "Did the arbitrator apply the correct burden of proof in holding that Farmers breached the insurance policy?" Farmers then argues that the arbitrator did not apply the correct burden of proof. Farmers does not base its argument on anything that the arbitrator said about the burden of proof in his opinion. Rather, Farmers essentially argues that, because it did not breach the insurance policy, any arbitrator who finds that it did breach the insurance policy *must* be applying the wrong burden of proof. Needless to say, this is a thinly veiled attempt to get this Court to review a factual finding. If Farmers's tactic were successful, the No-Fault Act's prohibition of judicial review of the factual findings of arbitrators would be meaningless, as the losing party in every arbitration would simply recast its disagreement with a factual finding as an argument about the burden of proof.

To be fair to Farmers, though, Farmers rests its argument on more than a disagreement with the arbitrator's finding. Farmers specifically claims that the arbitrator "exceeded his powers by failing to require Alpine to individually prove each claim," Farmers Reply Vacate at 15 [Docket No. 145], and "did not require Alpine to establish a prima facie case with respect to each claim." *Id*. at 16. Farmers's argument is difficult to understand. Farmers argues that Alpine bears the burden of proof on each and every one of the 1120 short-pay claims. That is true. But Farmers then seems to argue that Alpine cannot meet its burden by introducing evidence that is common to every claim. That is not true.

Courts frequently adjudicate consolidated claims. Suppose, for example, that seven victims of a fire in an apartment building each sue the landlord for negligence, and the seven cases are consolidated. The claims remain separate, and each of the plaintiffs must meet his

burden of proof. But the plaintiffs may introduce evidence that is common to all claims. For example, the plaintiffs may call an expert witness at trial to testify that the landlord acted negligently in failing to install a smoke alarm. That expert can testify once, and his testimony can be considered with respect to all seven claims. Just because the judge does not make the expert witness repeat the same thing seven times does not mean that the judge has not required the plaintiffs to "individually prove each claim."

In this case, although each of the 1120 short-pay claims remain distinct after consolidation — and although Alpine had to meet its burden of proof with respect to each one of those claims — Alpine was allowed to meet its burden by introducing evidence that applied across the board to some or all of the claims. One of the purposes of the No-Fault Act is to decrease the cost and complexity of litigation. Minn. Stat. § 65B.42(4). The efficiencies inherent in the ability to present and consider generalized evidence are the primary reason why the Minnesota Supreme Court permits consolidation of no-fault claims in appropriate cases. *Ill. Farmers Ins. Co.*, 683 N.W.2d at 806. Requiring the arbitrator to consider only — or even primarily — evidence that bears on only one claim, and requiring the arbitrator to issue individualized findings with respect to each of 1120 claims, would frustrate the purpose of consolidated arbitration. *Glass Serv. Co., Inc.*, 2007 WL 1815781 at * 6. The arbitrator's use of generalized evidence was entirely appropriate and does not require vacatur.

*F. Damages*

Finally, Farmers seeks to challenge the amount of damages awarded by the arbitrator. Once again, Farmers concedes that this is a finding of fact and that, under the No-Fault Act, judges are generally precluded from reviewing findings of fact. Once again, though, Farmers tries to repackage an issue of fact as an issue of law. This time, Farmers argues that "because the damages award is based on errors of law relating to standing and burden of proof, it cannot be sustained." Farmers's Br. Vacate at 20.

The "standing" issue to which Farmers refers appears to be the dispute over the 91 challenged assignments. The Court has already resolved that dispute, finding that the challenged assignments were made. The "burden of proof" issue to which Farmers refers appears to be its objection to the arbitrator's use of generalized evidence. The Court has already held that the arbitrator's use of generalized evidence was proper.

Farmers also contends that the damages award must be vacated because the arbitrator did not make clear whether he was applying the MN008 or the E1400. The Court has already addressed this issue at length. To recap: The Court has found that the E1400 applies. The parties agree that the E1400 provides a higher limit of liability than the MN008. If the arbitrator applied the E1400, then the Court agrees with his decision, and need not vacate his award. If the arbitrator applied the MN008, then the Court does not agree with his decision, but the only one who could have been harmed by that decision is Alpine. Thus the Court need not vacate the award at Farmers's request.

## III.  CONCLUSION

In its complaint, Alpine sought a declaration that Farmers was required to arbitrate all short-pay claims in a single, consolidated proceeding.  Docket No. 1, Ex. 1.  The Court ordered such an arbitration, and thus Alpine has received all of the relief sought in its complaint.  Docket No. 106.

In its counterclaims, Farmers sought various forms of declaratory and equitable relief.  Docket No. 7.  The Court has dismissed all of Farmers's counterclaims with prejudice and on the merits.  Docket Nos. 64, 106.

Farmers moved to vacate the arbitrator's award.  Docket No. 113.  Farmers's motion has now been denied.  Alpine has not sought an order confirming the arbitrator's award.

At this point, the Court appears to have adjudicated all of the claims and counterclaims that were pending before it, and thus judgment will be entered.

## ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, the motion of defendants Illinois Farmers Insurance Company and Mid-Century Insurance Company to vacate the arbitration award [Docket No. 113] is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  February  26 , 2010                     s/Patrick J. Schiltz
                                                Patrick J. Schiltz
                                                United States District Judge